# In the United States Court of Federal Claims

No. 18-1099L
Filed: December 21, 2022
NOT FOR PUBLICATION

---

**RIVERVIEW FARMS**, *et al.*,

                *Plaintiffs*,

**v.**

**UNITED STATES,**

                *Defendant.*

---

*Ethan A. Flint*, Flint Cooper, LLC, Edwardsville, IL, for the plaintiffs, with *Adam M. Riley*, of counsel.

*Laura W. Duncan*, Environment and Natural Resources Division, U.S. Department of Justice, Galveston, TX, for the defendant, with *Ashley Carter*, *Mark Pacella*, and *Dustin Weisman*, of counsel.

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

In this takings case, the parties are engaged in jurisdictional expert discovery to determine whether the statute of limitations bars the plaintiffs' claims. The defendant has filed a motion to compel site visits to the properties of the remaining bellwether plaintiffs and the production of model-output files generated by the plaintiffs' expert witness. The plaintiffs have filed a motion for a protective order regarding the defendant's requests.

The defendant's motion to compel site visits is denied as untimely, but the motion to compel is granted with respect to the model-output files. The plaintiffs' motion for a protective order is denied.

### A.     Background

The plaintiffs have alleged that the construction, maintenance, and management of river-training structures by the U.S. Army Corps of Engineers in the Middle Mississippi and Ohio rivers has caused atypical flooding to the plaintiffs' properties, resulting in a taking under the fifth amendment of the U.S. Constitution. The defendant filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that the statute of limitations had run on the plaintiffs' claims. On November 20, 2019, the motion to dismiss was deferred pending parcel-specific

discovery regarding the timing of the alleged atypical flooding.  *Riverview Farms v. United States*, No. 18-1099, 2019 WL 6211224 (Fed. Cl. Nov. 20, 2019).

On December 6, 2019, the Court directed the plaintiffs to file an amended complaint specifying the locations of the plaintiffs' properties and identifying eight bellwether plaintiffs.[1] (ECF 53.)  The deadline for the completion of all jurisdictional discovery was set for July 10, 2020.  (*Id.*)  Due to the COVID-19 pandemic, however, the parties encountered issues obtaining documents and conducting depositions.  (*See, e.g.*, ECF 59.)  At the parties' requests, the deadline for jurisdictional fact discovery was extended five times.  (ECF 60, 62, 65, 73, 90.)  The parties also required additional time to resolve a different discovery dispute.  (Pls.' Mot. to Compel, ECF 89; Def.'s Mot. for a Protective Order, ECF 93; Joint Status Rep., ECF 105.)  On May 10, 2022, jurisdictional fact discovery closed, with a limited exception for one deposition.  (ECF 106.)

The parties were directed to propose a schedule for jurisdictional expert discovery.  (*Id.*)  At the parties' suggestion, jurisdictional expert discovery was set to close on February 28, 2023.  (ECF 108.)  On the parties' joint motion, the deadline for jurisdictional expert discovery has been extended until April 14, 2023.  (ECF 111.)

The defendant has filed a motion to compel discovery to allow site visits to the properties of the bellwether plaintiffs and to obtain model-output files supposedly considered by the plaintiffs' expert witness.  (ECF 113.)  The plaintiffs have filed a motion for a protective order for both these requests.[2]  (ECF 112.)  The parties aver that they have conferred and attempted to resolve this dispute in good faith.  (ECF 112 at 3-4; ECF 113 at 2.)  The parties have filed response briefs.  (Def.'s Resp., ECF 114; Pls.' Resp., ECF 115.)  Further briefing and oral argument are unnecessary to resolve the pending motions.

The discovery dispute yields two holdings.  First, site visits are neither compelled nor prohibited.  The defendant's motion to compel site visits is untimely and therefore denied, but the plaintiffs have not demonstrated entitlement to a protective order regarding the requested site visits.  Second, the defendant's motion to compel the production of model-output files

---

[1] Jurisdictional discovery is now proceeding with six bellwether plaintiffs.  One bellwether plaintiff died, (*see* ECF 66), and the plaintiffs have indicated that they intend to dismiss an additional bellwether plaintiff.  (ECF 95 at 2 n.1.)

[2] The plaintiffs titled their motion, "Plaintiffs' Motion to Strike or for a Protective Order against the United States' Improper Discovery Requests."  (ECF 112 at 1.)  A motion to strike, however, usually concerns striking portions of pleadings.  *See* RCFC 12(f) ("Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *Am. K-9 Detection Servs., LLC v. United States*, Nos. 20-1614, 21-1165, 2021 WL 2328361, at *3 (Fed. Cl. June 7, 2021) (holding that the "plaintiffs' MJARs are not pleadings and therefore are not proper targets for a motion to strike").  Accordingly, the plaintiffs' motion is construed as a motion for a protective order.

considered by the plaintiffs' expert witness is granted; the plaintiffs' motion for a protective order with respect to those files is denied.

**B.      Site Visits to the Bellwether Plaintiffs' Properties**

In its motion to compel, the defendant argues that it is entitled to conduct site visits under Rule 34(a)(2) of the Rules of the Court of Federal Claims ("RCFC"), which permits a party to enter onto the responding party's property to "'inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.'"  (ECF 113 at 15 (quoting RCFC 34(a)(2)).)  The defendant argues that its site-visit request constitutes expert discovery rather than fact discovery because the plaintiffs' expert report "puts the lowest elevation points on the bellwether properties directly at issue"; the defendant argues that it "had no reason" to request site visits of the bellwether plaintiffs' properties during fact discovery.  (*Id.* at 17, 19.)  Additionally, the defendant notes that it will use information gleaned from the site visits to depose the plaintiffs' expert witness and rebut his report.  (*Id.* at 15-16, 19.)  Alternatively, if the site visits are found to constitute untimely fact discovery rather than expert discovery, the defendant argues that good cause exists for a limited extension of fact discovery because the COVID-19 pandemic prevented timely site visits.

In their motion for a protective order, the plaintiffs argue that the defendant's site-visit request is fact discovery.  (ECF 112 at 5-6.)  Because the deadline for fact discovery has passed, the plaintiffs argue that the defendant's request is untimely.  The plaintiffs also argue that their expert witness neither visited the sites nor considered information gathered from site visits in his report.  Rather, he relied on a Digital Elevation Model from publicly available data that the plaintiffs have provided to the defendant.  (Decl. of Dr. Nicholas Pinter, ECF 115-1.)

RCFC 26(a)(2)(B) provides limited categories of information to which a party is entitled in connection with an expert witness's written report.  These categories include "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them."  *Id*.  RCFC 26(b)(4)(A) permits a party to depose an expert witness after a report is disclosed but does not authorize the collection of additional discovery in connection with a deposition.[3]

By contrast, RCFC 34(a) applies to fact discovery.  RCFC 34(a)(2) governs requests to "enter onto designated land or other property possessed or controlled by the responding party, so

---

[3] The defendant quotes the advisory committee's note to the 2010 amendment to Federal Rule of Civil Procedure 26, which explains: "The most frequent method for discovering the work of expert witnesses is by deposition, but Rules 26(b)(4)(B) and (C) apply to all forms of discovery."  (ECF 113 at 16.)  Rules 26(b)(4)(B) and (C) deal with work-product and attorney-client protections, doctrines not at issue in these motions.  The same note also provides: "Counsel are also free to question expert witnesses about alternative analyses, testing methods,

that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

Other judges of this court have concluded that requests for expert discovery are conducted only pursuant to RCFC 26(a)(2) and 26(b)(4), not pursuant to RCFC 34(a). *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 14 (2007) ("Requests for production of documents are provided for in RCFC 34(a).  In contrast, expert discovery is provided for in RCFC 26(a)(2)(B), (b)(4)(A)-(B)."); *Ark. Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 429-31 (2006) ("The fact discovery addressed by RCFC 34(a) differs from the expert discovery covered by RCFC 26 . . . .").

A party may use the *mechanisms* for requests for production in RCFC 34 to gather information considered in an expert's report.  *See* RCFC 34(b) (providing the procedure regarding a request for production, including the contents of the request, a party's time to respond, and organizational requirements).  The focus of expert discovery, however, must be on the opinions of the expert witness.  RCFC 26(a)(2)(B); *see Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583, 584 (2000) (noting that the purpose of the distinction between expert discovery and fact discovery was to allow the parties to investigate all facts relevant to the case completely before inquiring into the opinions of expert witnesses).

To resolve the pending motions, a resolution is required regarding whether the defendant's request constitutes fact or expert discovery.  The defendant's request for site visits constitutes purely fact discovery.  The plaintiffs' expert witness neither visited nor surveyed the bellwether plaintiffs' properties.  He therefore did not consider any information gathered from site visits in his report.  Rather, to identify the lowest elevation point for each property, he used publicly available data from a Digital Elevation Model, which he shared with the defendant. (*See* ECF 115-1.)  The information sought by the defendant thus does not fall under any of the limited categories of RCFC 26(a)(2)(B).  RCFC 34(a)(2) does not automatically entitle the defendant to a site visit outside of the often-extended fact-discovery period in this case.

The defendant's contention that it had no reason to know of the potential relevance of site visits during fact discovery is meritless.  The defendant's motion to dismiss was deferred due to a lack of "parcel-specific information."  *Riverview Farms*, 2019 WL 6211224, at *10.  The purpose of identifying bellwether plaintiffs was to enable the parties to gather parcel-specific

_____

or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed."  (*See* ECF 113 at 16 (quoting this language).)  Although a party may question an expert witness regarding facts not considered in the report, this comment does not entitle a party to issue a request for production of facts not considered by the expert witness.

4

data more efficiently.[4]  The defendant itself submits that the parties initially contemplated conducting site visits during fact discovery but canceled the visits because of the pandemic. (ECF 113 at 21.)  The plaintiffs' expert report did not put at issue the elevations of locations on the bellwether plaintiffs' properties any more than the defendant's motion to dismiss did.  This case is about flooding on the plaintiffs' properties.  No plaintiff alleges that the flooding at issue subsumes the entirety of any relevant property, only portions of the property.  The topography of each parcel is and always was at the heart of the case and at the heart of the issue of whether the plaintiffs were or should have been aware of the flooding more than six years before filing this action.

Furthermore, the defendant's intention to depose the plaintiffs' expert witness using information gleaned from site visits is inapposite.  In this respect, the issue presented was addressed in *Arkansas Game & Fish Commission*.  Judge Lettow held in that case that "unevaluated data" gathered from property inspections in a takings case was fact discovery rather than expert discovery, even if the results eventually would be evaluated by experts. 74 Fed. Cl. at 430-31.  Even if site visits in this case would aid the defendant in rebutting the plaintiffs' expert report and deposing the plaintiffs' expert witness, the defendant is not entitled to such "unevaluated data" at this stage of the litigation, when fact discovery has closed.  *See Ark. Game*, 74 Fed. Cl. at 429-31.

The defendant's site-visit request constitutes an untimely request for fact discovery.  To prevail on its motion to compel, the defendant therefore must seek a limited extension of jurisdictional fact discovery.  RCFC 6(b)(1)(B) provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

In this case, the period of jurisdictional fact discovery lasted for more than two years— from December 6, 2019, until May 10, 2022.  (*See* ECF 53 (opening jurisdictional discovery); ECF 106 (closing jurisdictional fact discovery with an exception for a scheduled deposition).) During status conferences, the Court repeatedly expressed concern regarding the duration of the

---

[4] In a status conference held on December 6, 2019, the Court suggested appointing bellwether plaintiffs "to allow the Government to focus its (b)(1) statute of limitations motion more narrowly on specific Plaintiffs."  (ECF 55 at 10:24–11:1.)

jurisdictional fact discovery period.[5]  The parties have been warned that further requests to extend jurisdictional fact discovery would not be entertained.[6]

Good cause does not exist to extend fact discovery, however limited the extension. Despite the pandemic, the defendant could have conducted site visits safely by collecting data on the plaintiffs' properties outdoors, masked, and with no face-to-face interaction.  Although travel was risky during portions of the more-than-two-year discovery period, the Department of Justice and U.S. Army Corps of Engineers are national agencies with employees scattered across the country.  If the defendant's counsel was personally unwilling or unable to travel for more than two years, another government representative located closer to the plaintiffs' properties could have conducted a site visit at some time during the fact-discovery period to collect relevant data and information.

RCFC 26(b)(2)(C)(ii) requires a court to limit discovery if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ."  The defendant has forfeited the opportunity to conduct site visits during this stage of jurisdictional expert discovery.  The parties are entitled to as expedient a resolution as possible of the jurisdictional issues pending in this case.  Accordingly, the defendant's motion to compel site visits is denied.[7]

The denial of the defendant's motion to compel does not, however, entitle the plaintiffs to a protective order.  *See* RCFC 37(a)(5)(B) (providing that if a motion to compel is denied, "the court *may* issue any protective order authorized under RCFC 26(c)" (emphasis added)).

A motion for a protective order may be granted "for good cause" only "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  RCFC 26(c)(1).  The Federal Circuit has upheld the denial of a motion for a protective order when the moving party did not explain in detail how information would cause embarrassment or burden. *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006).  The moving party must make "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.'"  *Lakeland Partners,*

---

[5] (ECF 75 at 14:23-24 (the Court expressing that "we need to get moving"); ECF 92 at 15:11-17 (the Court remarking that "while none of us could have foreseen COVID, I don't think, in my wildest dreams, I would have ever anticipated that jurisdictional discovery, regarding the statute of limitations question that is at the heart of the Defendant's still-pending motion to dismiss, would have taken as long as it has taken").)

[6] (ECF 92 at 17:1-4 ("[The jurisdictional fact discovery] deadlines are firm.  [The Court] will not extend them except to the extent that further extensions, limited extensions, may prove to be necessary depending on the outcome of the Plaintiffs' [then-]pending motion to compel.")))

[7] This holding does not foreclose site visits during fact discovery on the merits of the plaintiffs' claims if this case proceeds beyond the motion to dismiss.

*LLC v. United States*, 88 Fed. Cl. 124, 133 (2009) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2035 (2d ed. Supp. 2009)). "[B]road allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order." *Id.* "A mere showing that discovery may involve some inconvenience or expense does not establish good cause to warrant a protective order under RCFC 26(c)." *United Affiliates Corp. v. United States*, 147 Fed. Cl. 412, 420 (2020).

The plaintiffs' motion for a protective order is devoid of any assertions, much less a demonstration, of annoyance, embarrassment, oppression, or undue burden or expense to any bellwether plaintiff. *See* RCFC 26(c)(1); *Forest Prods.*, 453 F.3d at 1361. The plaintiffs have not provided any facts regarding why the requested site visits would be unduly burdensome. *See Lakeland*, 88 Fed. Cl. at 133. Instead, the plaintiffs' motion focuses entirely on the timeliness of the defendant's request. (*See* ECF 112.) Although it could be inferred that it would be inconvenient to the bellwether plaintiffs to host site visits at this stage of discovery, that inconvenience alone is insufficient to warrant the entry of a protective order. *See United*, 147 Fed. Cl. at 420. Accordingly, the plaintiff's motion for a protective order regarding the site visits must be denied because the plaintiffs have not demonstrated entitlement to a protective order under RCFC 26(c)(1). Site visits are thus neither required nor proscribed.[8]

### C.      Model-Output Files

The defendant argues that the plaintiffs must produce the output files generated by the plaintiffs' expert witness's hydraulic model. The defendant notes that "the model-generated 'daily stage records at seven properties from 1929 through 2021,' . . . are expressly referenced on the first page of the report." (ECF 113 at 9 (quoting Excerpts of Pls.' Expert R., ECF 113-12 at 1).) The defendant contends that the actual output data is necessary to evaluate the reliability and accuracy of the plaintiffs' model; requiring the defendant to reproduce the output files at its own expense would be inefficient and could lead to mismatching results.

The plaintiffs argue that because their expert analyzed only data from the month of July, the defendant is not entitled to the output files for every other month of every other year. (ECF 112 at 6.) The plaintiffs assert that their expert witness ran the hydraulic model at "4-6 year increments," generating "an output file associated with each time period." (ECF 115 at 6.) The expert witness then extracted information for the month of July from the output files into an Excel spreadsheet to analyze the results. The plaintiffs argue that their expert witness "did not review, much less consider, the data for the other months for any of the years in question and had no reason to do so." (*Id.*) The plaintiffs note that the defendant can create and run the model on its own.

---

[8] The parties (including the plaintiffs) may yet find site visits to the properties of the bellwether plaintiffs beneficial. This order does not preclude the parties from conducting site visits if the parties can agree to them. The parties are encouraged to continue to seek to resolve discovery disagreements between themselves.

RCFC 26(a)(2)(B) provides that an expert witness's written report "must contain," among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them."

RCFC 26 was amended in 2011 "in accordance with the corresponding changes to [Federal Rule of Civil Procedure ("FRCP")] 26 that became effective December 1, 2010." RCFC 26 rules committee notes to 2011 Amendment. The advisory committee's note to the 2010 amendment of FRCP 26 explains that the phrase "facts or data" in FRCP 26(a)(2)(B)(ii) should "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Additionally, "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." FRCP 26 advisory committee's note to 2010 amendment.

The plaintiffs' expert report explains that a model "was used to create daily stage records at seven properties from 1929 through 2021." (ECF 113-12 at 1.) Those records are what the defendant seeks. (ECF 113 at 10.) Even if the plaintiffs' expert witness chose to extract data only for the month of July, his model generated output for other months. (*See* ECF 115-1.) The defendant is entitled to review the model-output files for the other months to enable appropriate evaluation of the expert report prepared by the plaintiffs' expert.

The plaintiffs do not argue that the model-output files sought by the defendant do not exist. Further, unlike information that would be derived from a site visit, the model-output files were not previously available to the defendant. Because the files exist and were prepared to enable the plaintiffs' expert to analyze the data and prepare his opinion, the files are within the ambit of RCFC 26(a)(2)(B)(ii). Accordingly, the plaintiffs should have disclosed the model-output files to the defendant as part of their expert report or produced them to the defendant upon request.

The defendant's motion to compel the production of the complete model-output files prepared by the plaintiffs' expert witness is granted, and the plaintiffs' motion for a protective order is denied regarding the model-output files.

### D.     Conclusion

The plaintiffs' motion for a protective order (ECF 112) is **DENIED**. The defendant's motion to compel (ECF 113) is **GRANTED in part** with respect to its request for the model-output files and **DENIED in part** regarding its site-visit requests.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

8