# In the United States Court of Federal Claims

No. 18-1099
Filed: June 27, 2023
NOT FOR PUBLICATION

---

**RIVERVIEW FARMS, et al.,**

  *Plaintiffs*,

v.

**UNITED STATES,**

  *Defendant*.

---

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

In this takings case, the defendant has filed a motion to strike a portion of the plaintiffs' expert disclosure report. (ECF 122.) Construing the defendant's motion as a motion *in limine*, the motion is granted because the plaintiffs' report fails to comply with the discovery schedule, lacks substantial justification, and prejudices the defendant.

## I.     BACKGROUND

The defendant's motion to dismiss was deferred in November of 2019 pending jurisdictional discovery regarding whether the plaintiffs' claims were time-barred. *See Riverview Farms v. United States*, Case No. 18-1099, 2019 WL 6211224 (Fed. Cl. Nov. 20, 2019). The parties have been engaged in jurisdictional discovery since the deferral of the motion to dismiss. In part due to difficulties stemming from the COVID-19 pandemic, at the parties' requests, the deadline for jurisdictional fact discovery was extended five times but ultimately closed on May 10, 2022. *See Riverview Farms v. United States*, Case No. 18-1099, 2022 WL 17853383 (Fed. Cl. Dec. 21, 2022).

A schedule for jurisdictional expert discovery was set on June 13, 2022. (ECF 108.) The first scheduling order contemplated a sequence of five events: (1) the plaintiffs would disclose their expert report(s) in accordance with Rule 26(a)(2) of the Rules of the Court of Federal Claims ("RCFC"); (2) the defendant would disclose its expert report(s) pursuant to RCFC 26(a)(2); (3) the plaintiffs would disclose their rebuttal expert report(s), if any; (4) expert discovery would close; and (5) the parties would file a joint status report proposing a schedule for further proceedings. (*See id.*) At the parties' requests, the deadline for expert discovery was extended four times. (ECF 111; ECF 118; ECF 120; ECF 121.) The subsequent scheduling orders amended deadlines but did not alter the substance of the sequence of the staggered disclosures. (*See* ECF 111; ECF 118; ECF 120.) After granting the third request, the Court

explained that "[n]o further extensions of jurisdictional expert discovery [would] be granted." The parties' fourth and final request was nonetheless granted to allow the parties sufficient time to respond to the reports and depose the relevant experts. (*See* ECF 121.)  Jurisdictional expert discovery closed on June 23, 2023.

The defendant filed its motion to strike a portion of the plaintiffs' rebuttal expert report on June 16, 2023.  (ECF 122.)  The defendant argues that the plaintiffs improperly included in their rebuttal report a surrebuttal to which the defendant will have no opportunity to respond under the discovery schedule.  The plaintiffs responded to the defendant's motion on June 23, 2023.  (ECF 124.)  Oral argument is not necessary to resolve the defendant's motion.

## II.    DISCUSSION

As a practical matter, the defendant's motion to strike is more properly treated as a motion *in limine*.  The plaintiffs' rebuttal expert report has not been filed with the court, so there is nothing pending on the docket to strike.  The goal of the defendant's motion is to preclude the plaintiffs from relying on the contested portion of its expert report at an evidentiary hearing, should one be necessary.  This type of motion is appropriately treated as a motion *in limine*.  *See Motion in Limine*, Black's Law Dictionary (11th ed. 2019) (defining a motion *in limine* as a "pretrial request that certain inadmissible evidence not be referred to or offered at trial").

The defendant's motion presents two issues: (1) whether the contested portion of the plaintiffs' report can be characterized as rebuttal or surrebuttal, and (2) whether that portion of the plaintiffs' report complies with the rules of discovery.

### A.    Character of the Report

Crucial to the defendant's motion is whether the plaintiffs' report includes a surrebuttal rather than solely a rebuttal.  The plaintiffs have filed an excerpt from the report of Dr. Holmes, the defendant's expert. (ECF 124-5.)  The excerpt shows that Dr. Holmes analyzed the data and model provided by Dr. Pinter, the plaintiffs' expert.  Dr. Holmes purportedly charted data provided by the plaintiffs' deposition statements and used Dr. Pinter's model to show significant flooding prior to July 2012.  (*Id.*)

The defendant has filed the table of contents of the plaintiffs' "rebuttal" report written by Dr. Pinter. (ECF 122-1.)  The first section of the plaintiffs' expert's "rebuttal" is entitled "Critique of the West Model" and runs for approximately 21 pages.  (*Id.*)  The defendant does not object to this portion of the report.  The second section is also approximately 21 pages long and is entitled "Response to Holmes' Rebuttal."  (*Id.*)  Subheadings to this section include: "Dr. Holmes' Criticisms of the Pinter Model Are Unsupported or Insubstantial;" "Dr. Holmes' Own Data Disproves His Opinions About July Flooding before July 26, 2012;" "Observed Data Confirm Our Opinion of Increased Flooding Through Time;" and "Pinter Report Results Are Confirmed by Using Dr. Holmes' Flooding Thresholds and Observed Stage Data."  (*Id.*)

The plaintiffs filed an excerpt of the contested portion of their rebuttal report.  (ECF 124-7.)  In the excerpt, Dr. Pinter highlights portions of Dr. Holmes's deposition testimony that supposedly support Dr. Pinter's approach and undermine Dr. Holmes's report.

The defendant argues that the plaintiffs' expert report is surrebuttal rather than rebuttal.  The plaintiffs argue that Dr. Holmes's report was an affirmative report rather than a rebuttal report.

Black's Law Dictionary defines a "rebuttal" as an opportunity "given to a party to present contradictory evidence or arguments."  *Rebuttal*, Black's Law Dictionary (11th ed. 2019).  A "surrebuttal" is defined as the "response to the opposing party's rebuttal in a trial or other proceeding; a rebuttal to a rebuttal."  *Surrebuttal*, Black's Law Dictionary (11th ed. 2019).

Based on the brief excerpt provided by the plaintiffs, Dr. Holmes's report was a rebuttal report rather than an affirmative report.  Dr. Holmes did not appear to have introduced data or models of his own.  Rather, he relied on data and models provided by the plaintiffs to rebut their argument.

The portion of the plaintiffs' report contested by the defendant can be characterized as a surrebuttal.  That portion of the report does not appear to offer contradictory evidence or arguments to respond to the defendant's affirmative model.  Rather, it responds directly to the defendant's rebuttal and can be characterized as a "rebuttal to a rebuttal."  *See id.*  The subsection captions of the plaintiffs' report themselves reflect that the challenged aspects of the report seek to respond to (*i.e.,* rebut) the opinions of the defendant's expert.  Accordingly, the disputed portion of the plaintiffs' expert report is a surrebuttal.[1]

---

[1] The plaintiffs also argue that the defendant's view of what constitutes an affirmative report and a rebuttal report is inconsistent because the defendant does not contest the appropriateness of the inclusion in the plaintiffs' report of rebuttal to the report of another of the defendant's experts, Dr. Teal.  The plaintiffs argue that both Dr. Teal and Dr. Holmes tailored their reports to rebut Dr. Pinter's findings.  In the excerpt of Dr. Teal's report provided by the plaintiffs, however, Dr. Teal appears to present a new model based on aerial photographs not provided by the plaintiffs.  (ECF 124-3.)  Although the model may have been tailored to counter the plaintiffs' report, Dr. Teal's report appears to be an affirmative report because it provides novel evidence.  The defendant's view of what constitutes an affirmative report rather than a rebuttal report is therefore consistent.

Even if Dr. Teal's report were a rebuttal report rather than an affirmative report, it is unclear how that holding would help the plaintiffs' case; the plaintiffs' argument leads to the conclusion that the defendant should have moved to prevent the admission of the entirety of the plaintiffs' "rebuttal" report for the sake of consistency.  Because the defendant has not contested the first portion of the plaintiffs' "rebuttal" report, the Court has no occasion to review the legitimacy of the uncontested first portion of the plaintiffs' "rebuttal" report.

**B.      Compliance with Discovery Rules**

The plaintiffs' expert report must comply with the rules and orders of the Court.  RCFC 26(a)(2)(D) provides that a party must disclose expert testimony "at the times and in the sequence that the court orders."  Pursuant to RCFC 37(c), if information is not provided in accordance with RCFC 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

The scheduling orders applicable to expert discovery in this case consistently required the same specified sequence of events: the plaintiffs' disclosure of their expert reports, followed by the defendant's disclosure of its expert reports, followed by the plaintiffs' disclosure of their "rebuttal" expert reports.  (*See* ECF 108.)  No surrebuttal expert report was contemplated or authorized.  The disputed portion of the plaintiffs' report does not comply with RCFC 26(a)(2)(D).  Accordingly, the plaintiffs must demonstrate either that their inclusion of that information "was substantially justified" or that their use of the report would be "harmless." RCFC 37(c).

The plaintiffs argue that their inclusion of the surrebuttal to Dr. Holmes's rebuttal report was substantially justified because, when the plaintiffs requested the final extension of expert discovery, the defendant agreed with the plaintiffs that the plaintiffs could respond to all three of the defendant's expert reports.

The plaintiffs appear to have misunderstood the scope of the defendant's agreement. Based on an email chain attached to the plaintiffs' response brief, when the plaintiffs requested the defendant's consent for a motion to extend the expert-discovery deadline for the final time, the plaintiffs' counsel suggested that a final deposition of Dr. Pinter should only address "new issues raised in the rebuttal report."  (ECF 124-1 at 5.)  The defendant's counsel responded that the proposed limitation seemed "ripe for potential disagreement and Court involvement."  (*Id.* at 4.)  The defendant's counsel later conceded to the plaintiffs' proposed limitation with a caveat: "We do not think it is appropriate for you to take a second shot at getting information on what you could have asked previously and are using our time crunch in order to give you that ability." (*Id.* at 3.)  The defendant thus reserved its right to object to Dr. Pinter's rebuttal report, which it had yet to receive.

Although the disagreement between the parties appears to stem from a good-faith misunderstanding, that misunderstanding does not create substantial justification for the plaintiffs to broaden the scope of jurisdictional expert discovery in direct contravention of the sequence of events specified in the discovery orders in this case.  A surrebuttal was not contemplated by the discovery orders and conflicts with previous instructions to limit the duration and breadth of jurisdictional discovery in this case.  *See, e.g.*, *Riverview Farms*, 2022 WL 17853383, at *4 n.5.  The defendant also reserved its right to dispute the propriety of the plaintiffs' "rebuttal" report.

The plaintiffs argue that the defendant's opportunity to depose Dr. Pinter again would cure any prejudice.  Even with an additional deposition, however, the defendant will have no similar opportunity to rebut the plaintiffs' rebuttal in a report with the assistance of the defendant's own experts.  Accordingly, the deposition does not cure the prejudice.

The defendant argues that if the plaintiffs' surrebuttal is not stricken, the defendant should be permitted to submit a surrebuttal report, as well.  The plaintiffs respond that if the defendant is permitted to submit a surrebuttal report, the plaintiffs should be allowed to re-depose Dr. Teal.  In effect, the parties' discovery disagreement amounts to a competition for the last word.  The Court concurs with Judge Damich's opinion denying a request for a surrebuttal because "there must be a practical end to expert discovery."  *Panasonic Commc'ns Corp. of Am. v. United States*, 108 Fed. Cl. 412, 415-16 (2013).

The plaintiffs' surrebuttal lacks substantial justification and prejudices the defendant. The disclosure of additional expert reports and depositions are unwarranted now that the period for expert discovery has ended.

## III.   CONCLUSION

In sum, the plaintiffs' expert report contains improper surrebuttal.  The disputed portion of the plaintiffs' report is outside the scope of jurisdictional expert discovery in this case, and the disclosure is neither substantially justified nor harmless.  Construing the defendant's motion to strike that portion of the report as a motion *in limine*, the defendant's motion (ECF 122) is **GRANTED**.[2]

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[2] If a jurisdictional evidentiary hearing is held, the Court will not admit pages 22-43 of the plaintiffs' "rebuttal" expert report into evidence, and the plaintiffs' expert may not himself testify during the plaintiffs' case about the matters contained in these pages.  If the defendant's expert testifies, however, the plaintiffs may use that portion of their report to question the defendant's expert to elicit testimony on cross-examination.  The plaintiffs may not rely on these same pages in their briefing on a renewed motion to dismiss.